986 F.2d 239
 Robert (Lenny Dixon) MOODY, Appellant,
v.
Sgt. Tracy PROCTOR; Unknown Security Guards Personnel at
N.S.P., et al.; Correctional Officer Keller, Unknown and
Unnamed Correctional Officers employed by the Nebraska State
Penitentiary Unknown and Unnamed Nurse employed by Lincoln
General Hospital's Surge-Ease Center; Officer Leland
Koresky, Appellees.
 No. 91-3620.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 7, 1993.
Decided Feb. 17, 1993.
 
 Kevin R. Hopp, Omaha, NE, for appellant.
 Mark D. Starr, Lincoln, NE (Don Stenberg, on the brief), for appellee.
 Before JOHN R. GIBSON, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert Moody appeals the district court's[1] judgment in favor of Tracy Proctor, Leland Koresky, and Michael Keller, all correctional officers at Nebraska State Penitentiary ("NSP"), following an evidentiary hearing on his 42 U.S.C. § 1983 complaint. Moody alleged that these defendants[2] violated his Eighth Amendment rights when, on several occasions after he underwent medical treatment, they lifted him into NSP's prisoner transportation van at Lincoln General Hospital while he was restrained with handcuffs and a black box,[3] inflicting physical pain and serious injuries to his wrists. We affirm.
 
 
 2
 At the evidentiary hearing conducted before the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), Moody testified that he objected each time defendants applied the black box prior to loading him into the prison van for the return trips to NSP; he informed them that he had been injured wearing it before;[4] and each time defendants lifted him from a hospital wheelchair into the prison van, they inflicted pain to his wrists--immediate shooting pains up and down his left arm and some swelling, and throbbing pain and numbness that lasted a few weeks. Defendants testified that they did not intend to injure Moody or cause him pain.
 
 
 3
 Several witnesses testified, over hearsay objections, that NSP policy required use of the black box on all prisoners leaving the institution, and once en route, a prisoner's restraints could not be opened. The reasons for the policy included safety of officers and prevention of escapes. Harold Clarke, NSP's warden, testified that correctional officers are not supposed to use their own judgment to determine whether an inmate requires restraints.
 
 
 4
 After the three-day evidentiary hearing, the magistrate judge noted that the parties agreed Proctor, Koresky, and Keller assisted in Moody's transport from the hospital to NSP, and on each trip Moody was secured with handcuffs and the black box. The magistrate judge found that in June 1987, Proctor and another officer lifted Moody into the prison van, pulling Moody's elbows away from his body and causing "immense pain" to Moody's wrists; and Clarke responded to Moody's grievances by stating that use of the black box during travel was standard procedure for security purposes, and no changes would be made in the procedure. The magistrate judge also found that "Clarke had instigated the policy of using the black box, ... correctional officers did not have discretion to not use the black box, and other policies prohibited the adjustment of handcuffs" after a prisoner was en route. The magistrate judge found that the injuries Moody suffered were the result of only moderate force; defendants "did not purposely cause the plaintiff to suffer pain, even though they recognized that the black box was severely limiting and possibly painful ... in [these] particular circumstances"; and defendants' conduct did not "display obduracy and wantonness." Finally, the magistrate judge found that, even though Moody advised defendants that he did not want them to use the black box and that he had previously been injured by it, "institutional policy was at that time to use it on all inmates, including [Moody], on all transfers." As a result, the magistrate judge recommended that judgment be entered for defendants. After conducting a de novo review, the district court concluded that defendants did not violate Moody's Eighth Amendment rights.
 
 
 5
 On appeal, Moody argues that the district court erred when it determined that Proctor, Koresky, and Keller did not have any discretion in the use of the black box; when it concluded that defendants' actions did not amount to deliberate indifference; and when it allowed hearsay testimony about written black box policies which were never introduced as evidence at trial, in violation of Federal Rule of Evidence 801.
 
 
 6
 We review a district court's findings of fact under the clearly erroneous standard. Paramount Pictures Corp. v. Metro Program Network, Inc., 962 F.2d 775, 777 (8th Cir.1992). Although the district court noted that NSP correctional officers could request changes in transport procedures to assure a prisoner's safety and well being, the court found that all inmates traveling outside of the institution were to be restrained using handcuffs and the black box, and that no changes to the restraints could occur while a prisoner was en route. The district court's determination that defendants lacked discretion in using the black box was not clearly erroneous. See LCA Corp. v. Shell Oil Co., 916 F.2d 434, 437-38 (8th Cir.1990) (under clearly erroneous standard, appellate court should reverse only if review of entire record leaves it with definite and firm conviction that mistake has been committed); Hylton v. John Deere Co., 802 F.2d 1011, 1014 (8th Cir.1986) (district court choice between two permissible views of evidence cannot be clearly erroneous).
 
 
 7
 In determining whether use of the black box in itself amounted to cruel and unusual punishment, we apply a de novo standard of review. See Falls v. Nesbitt, 966 F.2d 375, 377 (8th Cir.1992). We are persuaded by the Fifth Circuit's reasoning that a policy requiring all prisoners to wear a black box when outside of the prison does not violate the Eighth Amendment because, although the black box causes discomfort, its use is penologically justified "by the greater risk of escape ... and the reduced number of guards." Fulford v. King, 692 F.2d 11, 14 (5th Cir.1982). Moreover, although Moody suffered injury as a result of defendants' actions, we conclude there was no evidence that defendants acted maliciously and sadistically, see Hudson v. McMillian, --- U.S. ----, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), or with deliberate indifference, see Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 2326-27, 115 L.Ed.2d 271 (1991).
 
 
 8
 Finally, assuming without deciding that hearsay testimony was erroneously admitted, we conclude that the error does not require reversal. Any written policy aside, it is undisputed that use of the black box while transporting prisoners was standard procedure. We have concluded that this procedure did not constitute cruel and unusual punishment. Thus, any evidentiary error that may have occurred was harmless. See Lewis v. Sheriffs Dept. of St. Louis, 817 F.2d 465, 467-68 (8th Cir.), cert. denied, 484 U.S. 929, 108 S.Ct. 298, 98 L.Ed.2d 257 (1987).
 
 
 9
 Accordingly, we affirm.
 
 
 10
 MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.
 
 
 11
 I respectfully dissent because the fact that defendants had no discretion to request changes in transport procedures is legally irrelevant. A person may not plead the defense of superior orders to avoid liability for an act otherwise tortious. If an order, or an invariable practice, is unconstitutional, acting in accordance with it is actionable under 42 U.S.C. § 1983. See Little v. Barreme, 6 U.S. (2 Cranch) 170, 2 L.Ed. 243 (1804). In that case, Chief Justice Marshall lays down the principle that "instructions cannot change the nature of the transaction, nor legalize an act which, without those instructions, would have been a plain trespass." Id. at 179. See also Busche v. Burkee, 649 F.2d 509, 517 (7th Cir.1981), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).
 
 
 12
 In my view, defendants are liable if they acted with deliberate indifference to the possibility of serious injury to plaintiff. See Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 2326-27, 115 L.Ed.2d 271 (1991). Here the evidence of deliberate indifference is plain, given the complaints by plaintiff and the fact of his previous injury, of which defendants, as the magistrate found, were specifically made aware. The magistrate also found that one of the incidents complained of caused plaintiff immense pain that took several weeks to dissipate. A case for damages was therefore clearly made out. The fact, moreover, that Dr. Fox recommended the disuse of the black box in the plaintiff's instance, and the fact that its use was discontinued, seem incontrovertible evidence of injury; and these facts undermine entirely any reliance that the defendants may have been able to put on the proposition that it was somehow not feasible, or too expensive, to treat plaintiff otherwise than in accordance with accepted policy.
 
 
 13
 Because the district court relied on an erroneous legal proposition, and because its factual conclusions were clearly erroneous, I would reverse the judgment below.
 
 
 
 [1]
 The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska, adopting the report and recommendations of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska
 
 
 [2]
 Moody's complaint named additional defendants, but he appeals only the judgment in favor of Proctor, Koresky, and Keller
 
 
 [3]
 The black box is applied over the chain and lock area of conventional handcuffs to form a rigid link between the two wristlets
 
 
 [4]
 Other inmates also testified that they had been injured while restrained with handcuffs and the black box